## IN RE TORMES, RESPONDENT.

### PROCEEDINGS for Disbarment.—Demurrer and Motion to Strike.

No. 14.—Decided March 24, 1922.

ATTORNEY—DISBARMENT.—Generally legislatures enact laws specifying the causes for disbarment of attorneys and the proceeding to be followed in such cases, but these laws do not restrict the general powers of courts over attorneys who, as its officers, may be disbarred for other causes than those specified in the law.

ID.—ID.—The opinion discusses and determines the scope of our disbarment law and concludes that it is broad enough to include any imaginable just cause.

ID.—ID.—The general rule is that the Supreme Court will not interfere for the purpose of judging the conduct of attorneys in the original investigation of criminal acts committed by them without relation to the practice of their profession. But if the matter is duly brought before the Supreme Court and the crime involves moral turpitude, it may take immediate independent action if it seems that justice so demands.

ID.—ID.—INTENT.—The charges of the complaint demurred to not being clear as to the intent of the respondent, the demurrer was sustained with leave to amend.

The facts are stated in the opinion.

*Mr. José E. Figueras, Fiscal,* for the prosecution.

*Mr. J. H. Brown* for the respondent.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On February 10, 1922, the *Fiscal* of this court, delegated by the Attorney General of Porto Rico, filed a complaint praying for the disbarment of Leopoldo Tormes for the reasons stated in three different charges.

The court set the 24th of February for a hearing and

the respondent set up his defense on various questions of law which were argued by the attorneys for both parties and finally submitted to the court for consideration and decision. We shall consider the motion to strike out and the demurrer together, as they involve substantially the same questions.

It is maintained that as the complaint for disbarment was formulated under the Act creating the Committee on Character of Applicants for Admission to the Bar of March 9, 1909, as amended in 1910, its allegations must be limited to the causes expressly defined in the said Act. Furthermore, it is urged that this conclusion would be necessary even if the Act had not been mentioned in the complaint, citing the jurisprudence of California, Oklahoma, Indiana and North Carolina; but the respondent's attorneys admit that "in some States the courts have held that they are not limited to the causes specified in the statutes."

The question is interesting and but for the excessive amount of work weighing upon this court we should discuss it at proper length. The Oklahoma case cited, *Re Saddler*, 44 L. R. A. (N. S.) 1195, is worthy of consideration and illustrates the position taken by the respondent.

Legislatures have enacted laws determining the procedure for disbarment and the causes for which attorneys may be disbarred from the practice of the profession and generally the courts have applied these laws, but we think that the courts preserve the inherent power which they have had for centuries to disbar from practice such attorneys as by their acts have shown themselves to be unworthy of the confidence reposed in them, and it is a source of genuine pride to observe that the courts have been supported in their position by the leaders of the profession.

"Although it is well settled that the legislature may provide that certain acts or conduct shall require a disbarment, the accepted doctrine is that statutes and rules merely regulate the power to disbar

instead of creating it, and that such statutes do not restrict the general powers of the court over attorneys, who are its officers, and that they may be removed for other than statutory grounds." 6 C. J. 584.

The law of Porto Rico does not enumerate all of the causes for disbarment and it is so broad that it covers any imaginable just cause. Section 9 thereof reads as follows:

"Sec. 9.—An attorney or counsellor who is guilty of any deceit, malpractice, felony or misdemeanor, in connection with the practice of his profession or who is guilty of any crime involving moral turpitude,. may be suspended or removed from office by the Supreme Court of Porto Rico. Any person being an attorney or counsellor-at-law, who shall be convicted of a felony committed in connection with the practice of his profession or involving moral turpitude shall, upon such conviction, cease to be an attorney and counsellor-at-law, or to be competent to practice law as such. Upon the presentation to the Supreme Court of a certified copy of the judgment of such conviction, the name of the person convicted shall, by order of the court, be stricken from the roll of attorneys. Upon a reversal of such conviction, or pardon by the President of the United States or by the Governor of Porto Rico, the Supreme Court shall have power to vacate or modify such order of debarment [sic]."

As is most natural, it first refers to acts directly connected with the profession and prescribes that an attorney who is guilty of (1) *deceit,* (2) *malpractice,* (3) *felony,* or (4) *misdemeanor,* all *in connection with the practice of his profession,* may be suspended or disbarred by the Supreme Court of Porto Rico. The field is very broad. It not only includes acts which have already been defined as crimes, but also *malpractice* and *deceit,* which, in accordance with the established precedents and the recognized principles of truth, honor and morality on which the profession is based, will be weighed by the court in each particular case submitted to it.

But the Legislature went still farther. It prescribed also that an attorney who is guilty of *any crime involving moral turpitude* may also be suspended or disbarred. Here we have

an act not directly connected with the profession. The Legislature, considering that moral turpitude of any kind disqualifies a person for the practice of law, sanctioned the rule that moral turpitude shall be a ground for disbarment, although the act may have been committed without the sphere of professional action.

After prescribing the foregoing, which is complete in itself, the legislators added the case of "any person being an attorney or counsellor-at-law, who shall be convicted of a *felony* committed in connection with the practice of his profession or involving moral turpitude" and ordered that he "shall, *upon such conviction,* cease to be an attorney and counsellor-at-law, or to be competent to practice law as such," fixing the procedure to be followed in such a case.

The cases and procedure are different. First, reference is made to an *attorney who is guilty* and afterwards to a *person who being an attorney shall be convicted.* The first case covers *any crime;* the second one is limited to *felonies.* In the first case the court investigates the acts of the attorney. In the second case a certified copy of the judgment is sufficient for final action. The procedure to be followed in the first case is prescribed in section 12 of the Act. That in the second case is defined in section 9 itself.

Considering what has been said, we will now examine the charges of the complaint.

With respect to the third charge, no question has been raised. The respondent seems to admit that his conduct in connection therewith should be investigated in order that the court may decide in accordance with the evidence.

The first charge involves the consideration of three questions: Whether it should be stricken out because not a proper ground for this proceeding; whether in case the crime of false pretenses is charged, that crime involves moral turpitude, and whether it contains all of the necessary elements

to justify a conclusion that the respondent committed the act with criminal intent.

Let us examine the first question. We are asked to strike out this charge because the acts imputed have no connection with the practice of the profession and it is not alleged that the respondent had been tried and convicted in accordance with the law. The facts may be summed up as follows: By false and fraudulent simulations Tormes led Miguel Almodóvar to believe that he had on deposit in the Crédito y Ahorro Ponceño the sum of $3,000 and succeeded in inducing Almodóvar to pay that amount to him, Tormes giving him a check therefor. When the check was presented for collection it was found that Tormes had on deposit in the bank only about $200. Tormes at no time had on deposit in the bank more than $300.

The act is not, therefore, directly connected with the practice of the profession and we agree with the respondent that the general rule is that the Supreme Court will not participate in the investigation of criminal acts committed by an attorney unless the act is connected with the practice of his profession. The court should allow the attorney to be prosecuted like any other citizen and if he is convicted, then action will be taken in the almost automatic manner prescribed in section 9 of the Act.

But this does not mean that if any private citizen, or public officer, or any association in general and especially a bar association, knows that a practicing attorney has committed a crime which involves moral turpitude, whether or not it was connected with the practice of his profession, he or it can not make a complaint against the attorney, or that in such a case the Supreme Court can not investigate the conduct of the attorney for the sole purpose of determining whether or not he should be suspended or disbarred.

The decision of the first question depends, therefore, upon the second one, and this, in our opinion, is clear. We can

not conceive that a man can appropriate to himself the property of another by means of false and fraudulent simulations without making his moral turpitude manifest.

"Moral turpitude is anything done contrary to justice, honesty, principle, or good morals. The crime of extortion involves a moral turpitude, so as to justify the disbarment of any attorney who has practiced extortion. In re Disbarment of Coffey, 56 Pac. 448, 449, 123 Cal. 522.

"Everything done contrary to justice, honesty, modesty or good morals is done with turpitude, so that embezzlement involves moral turpitude, justifying the disbarring of an attorney. In re Kirby, 73 N. W. 92, 94, 10 S. D. 322, 39 L. R. A. 856." 5 Words and Phrases Judicially Defined, 4581.

We repeat that the general rule is that independent crimes committed by an attorney, whether or not they involve moral turpitude, will be treated like those committed by any other citizen, the Supreme Court reserving its decision of the question of the disbarment of the attorney until after the case has been disposed of. But we repeat also that in a case in which the independent crime committed involves moral turpitude the Supreme Court is not bound to wait until the criminal cause is prosecuted and finally decided, or to follow the judgment therein rendered as the only source of truth.

We have said that the court is not bound to do so, because in the exercise of sound discretion it could refuse to interfere and let the matter be inquired into and decided according to the criminal law, but in this case we think that we should exercise our discretion to take immediate action, principally because the same complaint makes two other charges directly connected with the practice of the profession.

Now only the third question remains for consideration. The wording of the charge leads to the conclusion that it tends to charge the respondent with the crime of false pretenses, but the element of intent is not expressed with sufficient clearness. Although it is alleged that the respondent

acted by means of false and fraudulent simulations, the charge loses in strength at the end when the ultimate intent of the respondent is not classified. Perhaps it might be deduced that he intended to appropriate Almodóvar's money to his own use, but if this is the case, it should be expressed clearly. The issue should be presented openly and frankly.

A similar conclusion is necessary as regards the second charge. The act charged is perhaps directly connected with the practice of the profession. It refers to a sum of money deposited in a district court and belonging to a minor. Tormes acted as attorney and obtained an order for the investment of the money for the minor's benefit. Afterwards, without special authorization from his client, Tormes signed his client's name to a check and collected the money. Finally it is said that the money received by the respondent "was paid to Angel Lomo, a resident of Ponce, as a part of the price for the cancelation of a mortgage wherein the latter was the mortgagee, the mortgagor being Antonio Franceschini Rodríguez." The *fiscal* merely narrates these facts in a vague and lengthy manner. He says nothing about the mental attitude of the respondent. It can not be concluded with certainty what his real intention was.

In case it should be concluded that the check had not been signed by Tormes as attorney and that the act charged was not committed in connection with the practice of the profession, the result would be that the charge was included within the principles applied to the first charge and, therefore, that the court is not bound to wait for the conviction of the respondent.

By virtue of all the foregoing we are of the opinion that the motion to strike out should be overruled and the demurrer to the first two charges sustained; but considering that if these two charges were amended so as to narrate the facts with clearness and precision and to explain the intent of the respondent in committing the act, they might perhaps,

if proved, serve as a basis for a disbarment, we believe that the *fiscal* should be granted a reasonable time within which to amend the complaint.

*Motion overruled and demurrer sustained.*

Justices Wolf, Aldrey and Hutchison concurred.